Prisoner's Name:     Lionel Nunn
Prisoner's Number:   Inmate No.23344-016
Place of Confinement:  USP TERRE HAUTE
                        U.S. PENITENTIARY
                        P.O. BOX 33
                        TERRE HAUTE, IN  47808



**FILED**

JUN 1 7 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | |
| **v.** | * | **Criminal No.** 00-cr-00157  RCL |
| | * | **Civil No.** _____ |
| | * | |
| **LIONEL NUNN** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY

    1.    The judgment of conviction was entered in the United States District Court for the District of Columbia.  The case number was CR 00-157.

    2.    The judgment of conviction was entered on March 9, 2005.  The sentencing hearing was held on March 9, 2005, and judgment was entered on March 14, 2005.

    3.    Petitioner received a sentence of life imprisonment and consecutive sentences of thirty-five years to life.

    4.    Petitioner was convicted and sentenced as follows:

Count 1 - -      Conspiracy to Distribute - - LIFE

Count 3 - -      RICO - - LIFE

Count 64 - -     First Degree Murder while Armed - - 25 years to LIFE

Count 65 - -     Murder in Aid of Racketeering - - LIFE

Count 66 - -     Witness Tampering Informant- - LIFE

Count 72 - -     First Degree Murder while Armed - - 25 years to LIFE

Count 73 - -     Violent Crime in Aid of Racketeering - - LIFE

Count 92 - -     18 U.S.C. § 924(c) - - 10 years consecutive to all others

Count 96 - -     18 U.S.C. § 924(c) - - 25 years consecutive to all others

Count 116 - -    Use of Communication Device for Narcotics Distribution - 48 months

Count 118 - -    Use of Communication Device for Narcotics Distribution - 48 months

Count 126 - -    Use of Communication Device for Narcotics Distribution - 48 months

Count 129 - -    Use of Communication Device for Narcotics Distribution - 48 months

5.     Petitioner entered a plea of not guilty as to all counts.

6.     Petitioner had a trial by jury.

7.     Petitioner did not testify in his own defense at trial.

8.     Petitioner appealed his judgment. The judgment was appealed to the United States Court of Appeals for the District of Columbia Circuit. Petitioner raised the following grounds on appeal jointly with those others on appeal:

2

*i.*     Whether a *Batson* structural error was shown.

*ii.*    Whether requiring appellants to wear stun belts during trial was supportable.

*iii.*   Whether empaneling an anonymous jury was error.

*iv.*    Whether the trial was tainted by such prosecutorial misconduct as inflammatory argument and vouching, among other practices.

*v.*     Whether the court erroneously admitted evidence lacking any relevance to the charged conspiracies.

*vi.*    Whether the government violated *Brady* by suppressing evidence that directly contradicted its theory about the ownership of the only significant cocaine seizure in the case.

*vii.*   Whether there was insufficient evidence that the charged conspiracies

         continued within the applicable limitations period.

*viii.*  Whether the charged local and federal offenses were misjoined.

*ix.*    Whether appellants' confrontation rights were violated by admitting drug analyses and autopsy reports without requiring the authors' testimony.

*x.*     Whether the judge's refusal to review *in camera* reports and notes

3

of cooperators' interviews violated the Jencks Act.

*xi.*    Whether the judge erroneously permitted key cooperators to attest to their religious obligations to be truthful.

*xii.*    Whether the court erroneously permitted the government to call a witness whose testimony was secured by misrepresentations that he was entitled to a sentence reduction under Fed.R.Crim.P. 35(b).

*xiii.*    Whether the court should have dismissed counts of the indictment or allowed adverse inferences arising from the government's losing evidence material to appellants' defense.

*xiv.*    Whether the judge gave an inadequate, unbalanced multiple conspiracies jury instruction.

In addition, Petitioner jointly raised the following issue with one other defendant:

*xv.*    Whether the judge erred in denying Nunn's and Handy's motions for severance.

9.    Petitioner's convictions and sentence were affirmed on appeal on July 29, 2011.  It was reported as *United States v. Moore et al*, 651 F.3d 30 (2011).

10.    Petitioner's request for a writ of certiorari from the United States Supreme Court, was denied on June 18, 2012.   The denial is reported as *Nunn v.*

*United States*, 132 S.Ct. 2772 (2012).

11.     Petitioner has not previously filed papers collaterally challenging the convictions in his case.

12.     Petitioner has no motions or other challenges currently pending challenging the instant conviction and sentence.

13.     Petitioner raises the following challenges to his incarceration:

  *i.*  Counsel Rendered Constitutionally Ineffective Assistance by Failing to Resolve this Case with a Plea Agreement

  *ii.*  Upon Information and Belief The Government's Reliance Upon Inconsistent Theories Between The Trial of Lionel Nunn and His Co-Defendant(s), and Cooperator Sentencings, Violated Mr. Nunn's Right To A Fundamentally Fair Trial and To Due Process, As Guaranteed Under the Fifth, Sixth, Eighth and Fourteenth Amendments

  *iii.*  Upon Information and Belief The Prosecution's Reliance Upon Unadjudicated  Offense Evidence Violated Mr. Nunn's Rights Under the Federal Rules of  vidence, and the Fifth, Sixth, Eighth and Fourteenth Amendments

  *iv.*  Upon Information and Belief, The Government Committed Misconduct Throughout All Phases of the Pre-trial, Trial and Post-Trial Process, Violating Mr. Nunn's Rights Under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution

  *v.*  Upon Information and Belief, Mr. Nunn was Denied His Right to the Effective Assistance of Counsel Throughout All Phases of the Pre-Trial, Trial and Post-Trial Process, In Violation of His Rights as Guaranteed Under the Fourth, Fifth, Sixth, Eighth and

Fourteenth Amendments to the U.S. Constitution

    *vi.*    Counsel's Deficient Acts and Omissions When Considered Together Undermine Any Confidence in the Verdict and Sentence in this Case

14.    None of these grounds for relief has previously been presented in any federal court. They were not previously raised because claims of ineffectiveness of counsel are properly raised in a Motion to Vacate.

15.    There are no future sentences to be served after this sentence is complete.

WHEREFORE, the Petitioner asks that the Court vacate his conviction and sentence in this case, or grant any other relief that this Court deems appropriate.

Respectfully submitted,

Gary E. Proctor
The Law Offices of Gary E. Proctor, LLC
8 E. Mulberry St.
Baltimore, MD 21209
(410) 444 1500
*Counsel for Mr. Nunn*

## **VERIFICATION**

**I DECLARE UNDER THE PENALTIES OF PERJURY THAT THE INFORMATION ABOVE AND IN THE ACCOMPANYING MEMORANDUM IS TRUE AND CORRECT.**

**EXECUTED BY COUNSEL FOR PETITIONER ON** June 17, 2013

_____        _____

Gary E. Proctor                 Date
Counsel for Petitioner

## Certificate of Service

I hereby certify that on this June 17, 2013, this MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY and accompanying MEMORANDUM IN SUPPORT THEREOF was delivered to Counsel for the Government via US Mail with proper postage affixed.

Gary E. Proctor

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | |
| **v.** | * | **Criminal No.** 00-cr-00157 |
| | * | **Civil No.** _____ |
| | * | |
| **LIONEL NUNN** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT A SENTENCE PURSUANT TO 28 U.S.C. §2255

### INTRODUCTION

On November 17, 2000, Lionel Nunn, was indicted along with a host of others in a 188 count superseding indictment.   As several of the charges leveled against Mr. Nunn concerned the killings of gentlemen named Carlos Cardoza, Jr. and Anthony Watkins, defendant was exposed to the death penalty, and was appointed two attorneys. However, on December 7, 2000, Veronice Holt entered her appearance, resulting in the removal of appointed counsel.

As the record would ultimately reveal, Holt was presented with substantial and seemingly incontrovertible evidence implicating her client in all manner of things. Witnesses Phyllis Webster, Oscar Veal, Maurice Andrews and Steven Graham in particular provided compelling evidence for the Government.

While Ms. Holt had significant experience, she certainly would not have been

considered for appointment for a case such as this. Her approach to this case, as outlined *supra*, antagonized the Court, the other co-defendant counsel, and the Government.

This Court's frustration with Ms. Holt is clear from the record. The record is replete with instances of Ms. Holt making legally and factually incorrect objections, asking inappropriate questions and showing a level of discourtesy to all parties.

But for counsel's substandard representation, there is a substantial likelihood that the outcome of Mr. Nunn's trial and sentencing would have been different. *Strickland v. Washington*, 466 U.S. 688 (1984).

## CLAIMS FOR RELIEF

I.    Introductory Statement

Undersigned counsel has worked diligently since his appointment to fully investigate, develop and present in this motion all legal claims currently known to him. He has operated, however, within a number of constraints imposed as outlined below. First and foremost, the undersigned was provided with more than fifty (50) boxes of files from previous counsel that encompassed a trial that was nine (9) months long. However, the undersigned was appointed approximately two and a half (2 ½) months prior to this Petition being due. Within those constraints, counsel has diligently attempted to identify, raise, and support all the substantial grounds for

2

relief that might be raised on Mr. Nunn's behalf. Counsel has set forth in this motion all such claims that he has been able to uncover, subject to the aforementioned constraints, at this time. Similarly, counsel has filed a Motion to Adopt so that any issues raised by codefendants are deemed also raised by him.

However, due to these constraints, development of Mr. Nunn's claims for relief remains incomplete. Counsel anticipates filing a discovery request, and exploring whatever rights are available under the Freedom of Information Act. Mr. Nunn does not waive any claims for relief which have not been identified or fully presented as a consequence of such limitations on his appointed counsel's efforts to date, and he reserves the right to amend this motion up until the point when the required information, evidence, and access to witnesses have been provided and a reasonable time thereafter.

Some of the claims set forth herein were raised and rejected on appeal before the U.S. Court of Appeals for the District of Columbia Circuit. They are being raised again in order to provide Mr. Nunn the opportunity, if he chooses to exercise it, to assert such claims before the Supreme Court of the United States on certiorari. In addition, in some instances, Mr. Nunn believes the law has changed in the intervening period, and therefore the claims should be revisited in light of intervening changes in the law that have been, or should be, made retroactive in his case.

3

II.     Counsel Rendered Constitutionally Ineffective Assistance by Failing to
        Resolve this Case with Plea Agreement

The Sixth Amendment guarantees a criminal defendant the right to the effective

assistance of counsel. *Strickland*, 466 U.S. 668.  Effective assistance of counsel is

not limited to counsel's performance at trial, but encompasses the entirety of

counsel's representation. "[P]erhaps the most critical period of the proceedings …

[is] the time of …arraignment until the beginning of …trial." *Powell v. Alabama*, 287

U.S. 45, 57 (1932). One of the most, if not the most, critical aspect of counsel's

pretrial representation is the duty to explore the possibility of a guilty plea in order

to obtain a more favorable sentencing outcome for the client than he would obtain if

he was convicted at trial.  *See Padilla v. Kentucky*, 130 S. Ct. 1473, 1481 (2010)

("Before deciding whether to plead guilty, a defendant is entitled to 'the effective

assistance of competent counsel.")(quoting *McMann v. Richardson*, 397 U.S. 759,

771(1970)).  Counsel failed to discharge this very basic duty to Mr. Nunn.  Had she

done so, there exists the reasonable probability that the outcome of his case would

have been different. *Strickland*, 466 U.S. at 694.

A.     *The vast majority of federal criminal cases resolve via guilty plea*

The vast majority of federal criminal cases resolve via plea of guilty.  In 2003,

for example, there were 75,573 cases disposed of in federal district court by trial or

plea. Of these, about 95 percent were disposed of by a guilty plea.[1]  This number should come as no surprise to competent federal practitioners who know that when their federal criminal cases that go to trial, losing is more than likely.  Only 11.9% of those federal defendants who faced a jury in 2005 were acquitted.[2]  In murder cases, such as Mr. Nunn's, a jury trial is even more likely to result in conviction.  Of those defendants in the 2003-2004 fiscal year who faced a jury for murder, only 3.8% were acquitted.  Moreover, the average sentence for a violent crime in the same time period in a case resolved by plea was roughly *half* of what it was following trial.

B.     *For this case in particular, resolution by plea was paramount.*

This case cried out for resolution by plea.  Not only was Mr. Nunn up against the same long odds as the average federal defendant, his case was even more likely to result in a conviction after a trial because the evidence against him was so strong.  Moreover, due to the panoply of charges he faced, there was simply no realistic way in which Mr. Nunn would not be convicted of *something*, and whatever he was convicted of would have, after the Court considered relevant and acquitted conduct, resulted in a life sentence.

---

[1]  *See* https://www.bja.gov/Publications/PleaBargainingResearchSummary.pdf

[2]  In 2002, the year Mr. Nunn went to trial, the Federal conviction rate was 89%. *See* http://bjs.gov/content/pub/pdf/bjsg02.pdf

In addition to the substantial evidence of his guilt, there were several other aspects of the case that made Mr. Nunn's trial by jury prognosis even more ripe for a plea. First, he was joined with Mr. Moore and Mr. Gray, whom the Government believed was so evil that each deserved to die. Nunn was seated next to these defendants and associated with them in the jury's mind at trial. Second, because the Government was seeking the death penalty against others, Nunn would to be tried by a "death-qualified jury," which, according to all competent evidence, is far more conviction-prone than an ordinary jury. *See Lockhart v. McCree*, 476 U.S. 162, 173 (1986) (noting studies). Third, Mr. Nunn's guilty plea in another quasi-related case for money laundering was to be admitted at trial.

The Supreme Court has recently reiterated that the plea bargaining process plays a central role in the criminal justice system. *Lafler v. Cooper*, 132 S.Ct. 1376, 1388 (2012), *Missouri v. Frye*, 132 S.Ct. 1399, 1407 (2012). In fact, in the opinion of the Court, the plea bargaining process "is not some adjunct to the criminal justice system; it *is* the criminal justice system." *Id*. at 1407 (emphasis in original) (internal citation omitted). Ninety-seven percent (97%) of criminal cases in the federal court system resolve by way guilty pleas and this has long been the case. *See Lafler*, 132 S.Ct. at 1388. In fiscal year 2003, this number was 96%. As such, it is beyond dispute that the plea process is a critical stage at which the Sixth Amendment right

to counsel applies. *Lafler,* 132 S.Ct. at 1384; *Padilla*, 130 S.Ct. at 1482 (the Court has "long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel.")(citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) and *McMann v. Richardson*, 397 U.S. 759, 770-711(1970)). *See also Bordenkircher v. Hayes*, 434 U.S. 357, 362 (1978)(noting that the Court has "recognize[d] the importance of counsel during plea negotiations.").[3] This principle is unsurprising, as the decision whether or not to plead guilty or proceed to trial is one of the most fundamental choices facing a defendant. *Jones v. Barnes*, 464 U.S. 745, 751 (1983).

In fact, the American Bar Association has incorporated these important principles into its guidelines for the performance of defense counsel. The ABA's Defense Function Standard speaks clearly to counsel's duties to the client in relation to the possible dispositions of a case. According to Standard 4-5.1(a), "after informing himself or herself fully on the facts and the law, defense counsel should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome." *See also* Pleas of Guilty Standard 14-

---

[3] As the Kentucky Court of Appeals recognized on *Padilla's* remand, "had the immigration consequences of Padilla's plea been factored into the plea bargaining process, trial counsel may have obtained a plea agreement that would not have the consequence of mandatory deportation." *Padilla v. Commonwealth*, 381 S.W. 3d 322, 330 (Ky. Ct. App. 2012). Similarly, here, had Ms. Holt factored in the inevitable conviction and mandatory life sentences, a plea agreement to less than that could surely have been negotiated.

3.2(b) ("defense counsel, after appropriate investigation, should advise the defendant of the alternatives available and considerations deemed important by defense counsel or the defendant in reaching a decision).  The Supreme Court has oft relied on these guidelines in determining the standard of care owed criminal defendants.  *See, e.g., Padilla,* 130 S.Ct. at 1482 ("We long have recognized that "[p]revailing norms of practice as reflected in American Bar Association standards and the like ... may be valuable measures of the prevailing professional norms of effective representation.") (internal citations omitted).

      i.   *Deficient Performance*

The Sixth Amendment guarantees that counsel at any critical stage must be effective.  *Strickland,* 466 U.S. 688.  If a petitioner alleges that his counsel provided ineffective assistance during a critical stage, he must demonstrate that "counsel's performance fell below an objective standard of reasonableness," *id.* at 687-88, and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 691.  *See Hill. v. Lockhart,* 474 U.S. 52, 57 (1985) (applying *Strickland* test to the plea context).  *Cf., Lafler,* 132 S.Ct. at 1384; *Frye,* 132 S.Ct. at 1386-7 (reiterating application of *Strickland* test to the plea bargaining stage).

Trial counsel's performance of her obligation to assist Mr. Nunn in making the

decision whether or not to plead guilty was deficient.  First, trial counsel failed adequately to explain to Mr. Nunn the sentencing implications of losing at trial versus entering a plea of guilty.  A criminal defendant must have a firm understanding of all of these concepts if he is to make an informed decision with regard to the risks and benefits of negotiating a guilty plea.

It was incumbent upon Ms. Holt to explain these possibilities to her client. While, as outlined *supra,* this subject was never broached with Mr. Nunn, Ms. Holt would have had a duty to explain the risks even if Petitioner had expressed some initial resistance.  *See Libretti v. United States*, 516 U.S. 29, 50 (1995) ("[I]t is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement.").

Alerting a defendant facing significant prison time in a federal prosecution to the costs and benefits of pleading guilty on only one occasion is insufficient.  *See Frye*, 132 S.Ct. at 1407 ("In today's criminal justice system... the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant.").  Far from this, Ms. Holt never even bothered to visit Mr. Nunn.  She complained about his relocation to Orange County Jail straining the attorney-client relationship, however she never visited him in the DC Jail either after accepting him as a client. Mr. Nunn has provided this Court with an affidavit which states that:

I Lionel Nunn to the best of my sound mind only remember Veronice Holt speaking with me 4 times total via phone, for no more than 5 minutes each time. What she primarily discussed with me on the phone was getting me moved closer. She did not ever go into the nature of the evidence against me or my options other than trial.

As for Ms. Holt visiting me to prepare for trial, she only visited me once and this was before I was a client, and she was soliciting me hiring her at DC jail. I only saw her after that twice outside of court: once at Charles County and once at Orange County. The last time I saw Ms Holt again was after trial was over and she visited me at Montgomery County wanting to do my appeal.

The first time I learned that the Government had written a letter to me soliciting my plea via a letter dated January 23, 2001 was towards the end of trial in this matter, in late 2002. Ms. Holt never visited me in the Spring or Summer of 2001 and she did not mention it during the short telephone conversations we had during this time period. Given what I was charged with, and the likelihood of prevailing at trial, I would have been accepted the plea offer if the risks of trial had been thoroughly explained to me - - as Mr. Asbill did with regard to my pending Money Laundering charge. But Ms. Holt never discussed it with me

(Pet. Ex. 1).[4]

Of additional significance is that, for a case that was to go to trial for nine (9) months, Ms. Holt hired **no investigator, no paralegal and had no associates.** She was going it alone. As she indicated to the Court, she was significantly behind in the case preparation at the start of trial, unpreparedness which was only compounded by

---

[4] Counsel has received what purports to be a full copy of the file of Ms. Holt, Mr. Asbill and Mr. Zwerling, and there is nothing therein that in any way contradicts the affidavit of Mr. Nunn. That said: counsel has been unable to discuss with Ms. Holt as she has not returned his email, two (2) phone calls or the letter he sent, each requesting that she discuss the case with him.

the death of her mother a short time before trial. Indeed, she moved for a continuance on the basis that she was not prepared. *See* Docket Entry 659.

Perhaps most crucially, at the same time that Mr. Nunn was charged with this case at bar, he was also charged with a Money Laundering charge. *United States v. Nunn*, 00-0125. In that case Mr. Nunn was represented by Henry Asbill, a well known and respected member of this bar. Mr. Asbill too has provided an affidavit, Pet. Ex. 2, which states in relevant part that:

> I knew that Mr. Nunn was also being prosecuted simultaneously in the Gray case in which he was represented by Veronice Holt, Esq. I was further aware from my conversations [with Government counsel] that the Government was considering...charging the death penalty in Ms. Holt's case. In my pre-trial meetings with the Government I inquired, as was my usual practice, whether a plea offer might be forthcoming - - either in my case alone or globally.

> I received a draft letter from the Government and I provided some feedback as I felt that the letter should be more concrete and spell out with as much specificity as possible what the plea terms would be. The Government then sent both Ms. Holt and me the final letter, which was dated January 23, 2001. The letter makes clear the Government had, at that time, a desire to work out a global resolution of Mr. Nunn's two pending cases.

> I orally discussed my case part of the letter with Mr. Nunn, but only my part. I specifically told Mr. Nunn that I could not evaluate nor would I discuss the part pertaining to the Gray case with him. Per his instruction, I did not send Mr. Nunn, who was incarcerated, a copy of the letter.

I have no personal knowledge whether Ms. Holt ever raised the plea issue with Mr. Nunn before the Gray trial. I do recall Mr. Nunn expressing to me his frustration prior to that trial about the very limited nature of his contact with Ms. Holt.

Mr. Nunn elected to plead in the case in which I represented him. He was not a defendant who would not plead guilty under any circumstances. In all of my subsequent conversations with Mr. Nunn, he never told me that Mr. Holt had discussed the plea offer with him, or that she gave or read to him the Government's letter, or that he had rejected the offer outlined in the government's January 23rd letter and decided to take his chances at Gray trial.

(Pet. Ex. 2:1-2). The letter from the Government, referred to above, is attached as

Pet. Ex. 3. But one need not look to either affidavit for evidence of Ms. Holt's

deficient performance during plea negotiations. Ms. Holt herself conceded

[t]here's no plea process going on here. I haven't asked the government for that letter or asked the government for anything. When I first came in here, the government asked me to come in and sit down with my client. I never did. There is no plea process going on here.

(Tr. 11/27/02 at 50). What is especially conspicuous by its absence from this missive,

is any suggestion that Mr. Nunn was consulted or acquiesced in Ms. Holt's actions in

this regard. Indeed, it was not until she was several months into trial that Ms. Holt

first discussed the letter containing the potential plea agreement (Pet. Ex. 3).[5]

---

[5] Ms. Holt, in opening statement, did make a vague reference to the Government soliciting cooperation from Mr. Nunn. (Tr. 5/13/02 PM at 25-26). Mr. Nunn, however, could scarcely be expected to have gleaned from this that sixteen (16) months earlier the Government had sought his cooperation, much less have made a knowing rejection of this entreaty. *See* (Pet. Ex. 3)

*ii.. Prejudice*

In order to prove that he was prejudiced by Ms. Holt's deficient performance, Mr. Nunn must demonstrate that "the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S.Ct. at 1384; *Frye*, 132 S.Ct. at 1388-9 (citing *Strickland*, 466 U.S. at 694).

Indeed, *Frye* is Mr. Nunn's doppelganger.  In that case:

> On November 15, the prosecutor sent a letter to Frye's counsel offering a choice of two plea bargains. The prosecutor first offered to recommend a 3–year sentence if there was a guilty plea to the felony charge, without a recommendation regarding probation but with a recommendation that Frye serve 10 days in jail as so-called "shock" time. The second offer was to reduce the charge to a misdemeanor and, if Frye pleaded guilty to it, to recommend a 90–day sentence. The misdemeanor charge of driving with a revoked license carries a maximum term of imprisonment of one year. . The letter stated both offers would expire on December 28. Frye's attorney did not advise Frye that the offers had been made. The offers expired.

*Frye,* 132 S.Ct. at 1404 (internal citations omitted).  As with Mr. Frye, Mr. Nunn's sentence must be set aside.  Here, a plea offer - - indeed a very favorable plea offer - - was made, yet the case went to trial.  Of that there is no doubt.  But what is also clear is that the very favorable plea offer was not even conveyed by Ms. Holt to her client. Moreover, as Mr. Nunn simultaneously demonstrated with his attorney Mr. Asbill, Mr. Nunn was amenable to the concept of cutting his losses and pleading guilty.  Thus, there exists the very reasonable likelihood that Mr. Nunn would have accepted a plea

13

in this case too had Ms. Holt taken the time to discuss the concept, never mind the offer, with her client.

As the Supreme Court recently reiterated, *Strickland*'s reasonable probability language does not require the petitioner to prove a certainty of a different outcome. In *Harringon v. Richter*, the Court noted,

> [i]n assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is reasonably likely the result would have been different. This does not require showing that counsel's actions more likely than not altered the outcome...

131 S.Ct. 770, 791-92 (2011) (internal quotation marks and citations omitted).

Mr. Nunn will be able to make this showing at any hearing in this matter. *See United States v. Gordon*, 156 F.3d 376, 380 (2nd Cir. 1998) ("whether the government had made a formal plea offer was irrelevant because Gordon was nonetheless prejudiced because he did not have accurate information upon which to make his decision to pursue further plea negotiations or go to trial"). The Government demonstrated, by approaching both Mr. Asbill and Ms. Holt, that it was interested in working out a plea with Mr. Nunn. Even assuming, *arguendo*, this Court believes that Mr. Nunn was adamantly opposed to a guilty plea, this Court may still find that Mr. Nunn would not have remained so had Ms. Holt diligently explained Nunn's

14

sentencing exposure were Nunn to be convicted at trial. *See Wannatee v. Ault*, 259 F.3d 700, 703-704 (8th Cir. 2001) (prejudice proven if he "would have accepted [a] plea but for counsel's advice, and that had he done so he would have received a lesser sentence.").

Moreover, a finding of prejudice does not, require proof of a reasonable probability of a *particular* outcome, but merely a *different* one. In *Hill*, the Supreme Court held that when a petitioner alleges that counsel's deficient performance resulted in the ill-advised acceptance of a plea, he must demonstrate a reasonable probability that had he been properly advised, he would have refused the plea and proceeded to trial. *Hill*, 474, U.S. at 59. The petitioner need not show that he would have prevailed at trial, or that he would have achieved a particular sentencing outcome if he were convicted at that trial. He simply must show that he would not have proceeded as he did had he been competently advised.

    *iii.* *Remedy*

According to the Supreme Court, "the remedy for a violation of the Sixth Amendment should be tailored to the injury suffered and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364 (1981). The Court retains significant discretion in crafting a remedy and when doing so, the court should, "identify and then neutralize the taint by tailoring relief

15

appropriate in the circumstances." *Id*. at 365. *See Lafler*, 132 S.Ct. at 1388-89 (citing *Morrison* language on remedy).

In this case, the purest remedy would be to grant Mr. Nunn a new trial. *Kimmelman v. Morrison*, 477 U.S. 365, 369 (1986) (state must bear the risk for the provision of the ineffective assistance of counsel). In the event that the Court does not find that to be the most specifically tailored remedy, the Court could also impose a sentence more akin to what would have been imposed if counsel had performed competently. Counsel concedes that this Court may conclude that "the correct remedy in these circumstances, however, is to order the State to reoffer the plea agreement." *Lafler*, 132 S. Ct. at 1391.[6] There were no shortage of cooperators in this case, some of whom committed many more crimes than Mr. Nunn. As such, this Court should be able to gauge what sentence would have been imposed had Ms. Holt rendered effective assistance.

III.    <u>Upon Information and Belief The Government's Reliance Upon Inconsistent Theories Between The Trial of Lionel Nunn and His Co-Defendant(s), and Cooperator Sentencings, Violated Mr. Nunn's Right To A Fundamentally Fair Trial and To Due Process, As Guaranteed Under the Fifth, Sixth, Eighth and Fourteenth Amendments</u>

Upon information and belief, the government's reliance upon inconsistent theories between the trial of Lionel Nunn and that of both his co-defendants, and at

---

[6] *Accord, Vartelas v. Holder*, 132 S.Ct. 1479, 1492, n.10 (2012).

16

cooperator sentencings, violated Mr. Nunn's right to a fundamentally fair trial and to due process, as guaranteed under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and as such provisions are interpreted in all federal case law citing to, noting, or otherwise relevant to an interpretation of each of these constitutional provisions, as well as any other law set forth throughout the body of this motion.

Mr. Nunn hereby incorporates into this claim for relief, by express reference, any accompanying motion for discovery that will be filed, all other paragraphs contained in this motion, all motions filed in this case previously and to be filed subsequent to the filing of this motion, as well as all appellate briefing (including certiorari litigation), filed by Mr. Nunn in connection with the above-referenced criminal case, and any further amended motions or petitions to be filed by Mr. Nunn at any time in the future.

The claim set forth herein is made in part based upon information and belief, and in part based upon investigations and facts known to Mr. Nunn, through the exercise of due diligence, to date. Until this Court grants Mr. Nunn the discovery he seeks in support of this claim, including but not limited to sealed transcripts of cooperator sentencings, however, Mr. Nunn is incapable of alleging with more specificity and/or

with more factual certainty all of the facts that may be available or that may exist in support of this claim.

The facts in support of this claim, as well as the contours of the claim itself, are necessarily incomplete due to, *inter alia*: the denial of access to materials, time constraints that were no fault of Petitioner, documents, files, information and/or evidence to which Mr. Nunn has a right under applicable federal law.

Set forth herein is a statement of the constitutional/legal claims of which Mr. Nunn is aware at this time, and those facts which he knows or has reason to believe are true, despite the denial of sufficient resources and access to the relevant materials, documents, files, information and/or evidence. Mr. Nunn reserves the right to amend this claim, and/or add additional claims in an amended §2255 motion, after he has been provided access to all relevant files, documents, information, material and/or evidence to which he is entitled under applicable federal law and as more specifically requested in any motion for discovery and thereafter sufficient time to investigate and develop facts and witnesses in support of this and/or other claims that may arise once such counsel and access to information have been provided.

"The [prosecution] cannot divide and conquer in this manner. Such actions reduce criminal trials to mere gamesmanship and rob them of their supposed search for truth." *Drake v. Kemp*, 762 F.2d 1449, 1479 (11th Cir. 1985) (Clark, J.,

concurring), *cert. denied* 478 U.S. 1020 (1986).  As one federal judge has observed, "[Defendant 1] and [Defendant 2] cannot both be guilty of firing the same bullet because physics will not permit it." *Nichols v. Collins*, 802 F.Supp. 66, 74 (S.D.Tex. 1992), *aff'd in part and rev'd in part*, 69 F.3d 1255 (5th Cir. 1993), *cert denied Nichols v. Johnson*, 518 U.S. 1022 (1996).

In *Thompson v. Calderon*, 120 F.3d 1045, 1058 (9th Cir. 1997) (en banc), *rev'd on other grounds*, 523 U.S. 538 (1998), the Court held: "[I]t is well established that when no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime."  The Second Circuit has held that when a prosecutor relies upon an inconsistent theory between criminal trials, the defense is permitted to present evidence of the inconsistency.  *U. S. v. Salerno*, 937 F.2d 797, 811 (2nd Cir.1991), *rev'd on other grounds*, 505 U.S. 317 (1992).

Lower federal courts have reached similar conclusions.  For example, in *Nichols*, *supra*, the court held: "This Court determines that the due process boundary upon prosecutorial conduct and the appearance of basic fairness derived from that boundary command a determination that in a criminal prosecution, the State is constitutionally estopped from obtaining a fact finding in one trial and seeking and obtaining an inconsistent fact finding in another trial."  802 F.Supp. at 74.

Finally, although the Supreme Court has not ruled on this precise issue, it has held in a related context that while the government may proceed in a single prosecution on inconsistent theories, the Double Jeopardy Clause's prohibition against successive prosecutions prevents the government from retrying a defendant on a theory inconsistent with an earlier judgment of conviction or acquittal. *See Dowling v. United States*, 493 U.S. 342, 347- 49 (1990). For all of these reasons, this Court should reverse Mr. Nunn's conviction, obtained as it was based at least in part on a theory completely at odds with that pursued in the co-defendant's trial, and cooperator sentencings, and grant him a new trial.

IV.   Upon Information and Belief The Prosecution's Reliance Upon Unadjudicated Offense Evidence Violated Mr. Nunn's Rights Under the Federal Rules of Evidence, and the Fifth, Sixth, Eighth and Fourteenth Amendments

Upon information and belief, the prosecution's reliance upon unadjudicated offense evidence violated Mr. Nunn's rights guaranteed under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and as such provisions are interpreted in all federal case law citing to, noting, or otherwise relevant to an interpretation of each of these constitutional provisions, as well as any other law set forth throughout the body of this motion.

Mr. Nunn hereby incorporates into this claim for relief, by express reference, any later motion for discovery, all other paragraphs contained in this motion, all

motions filed in this case previously and to be filed subsequent to the filing of this motion, as well as all appellate briefing (including certiorari litigation), filed by Mr. Nunn in connection with the above-referenced criminal case, and any further amended motions or petitions to be filed by Mr. Nunn at any time in the future.

The claim set forth herein is made in part based upon information and belief, and in part based upon investigations and facts known to Mr. Nunn, through the exercise of due diligence, to date.  Until this Court grants Mr. Nunn the discovery he seeks in support of this claim, however, Mr. Nunn is incapable of alleging with more specificity and/or with more factual certainty all of the facts that may be available or that may exist in support of this claim.

The facts in support of this claim, as well as the contours of the claim itself, are necessarily incomplete due to, *inter alia*: the denial of access to materials, documents, files, information and/or evidence to which Mr. Nunn has a right under applicable federal law.

Set forth herein is a statement of the constitutional/legal claims of which Mr. Nunn is aware at this time, and those facts which he knows or has reason to believe are true, despite the denial of sufficient resources and access to the relevant materials, documents, files, information and/or evidence.  Mr. Nunn reserves the right to amend this claim, and/or add additional claims in an amended §2255 motion once he has been

21

provided access to all relevant files, documents, information, material and/or evidence to which he is entitled under applicable federal law, and thereafter sufficient time to investigate and develop facts and witnesses in support of this and/or other claims that may arise once such access to information have been provided.

The government relied upon unadjudicated "bad act" evidence during Mr. Nunn's trial. This error was exacerbated by the ineffectiveness of Ms. Holt, whose motion practice, at best, could be called threadbare. Accordingly, much of the 404(b) testimony simply went unchallenged.

The Eighth Circuit has held:

> To be admissible as Rule 404(b) evidence, the evidence must be '(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged.'

*U.S. v. Shoffner*, 71 F.3d 1429, 1432 (8th Cir. 1995) (citations omitted). The Court has held that it is reversible error "when it is clear that the evidence has no bearing on the case." *U.S. v. Williams*, 895 F.2d 1202, 1205 (8th Cir.1990). The law in this Circuit is no different. "[T]he standard for admission of 'other acts' evidence is whether the jury could reasonably find by a preponderance of the evidence that the act occurred and that the defendant was the actor." *Id.*

The evidence submitted in this case fails several of these tests. First, the evidence itself was so tenuous that no reasonable jury could have found by any standard of proof that the act occurred. Second, any probative value in this evidence was outweighed by its prejudicial effect.

V. <u>Upon Information and Belief, The Government Committed Misconduct Throughout All Phases of the Pre-trial, Trial and Post-Trial Process, Violating Mr. Nunn's Rights Under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution</u>

Upon information and belief, the government in general, and the prosecution specifically, engaged in repeated misconduct throughout all phases of the pre-trial, trial, and post-trial proceedings in this case, in violation of Mr. Nunn's rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and as such provisions are interpreted in all federal case law citing to, noting, or otherwise relevant to an interpretation of each of these constitutional provisions, as well as any other law set forth throughout the body of this motion.

Mr. Nunn hereby incorporates into this claim for relief, by express reference, any motion for discovery, all other paragraphs contained in this motion, all motions filed in this case previously and to be filed subsequent to the filing of this motion, as well as all appellate briefing (including certiorari litigation), filed by Mr. Nunn in

connection with the above-referenced criminal case, and any further amended motions or petitions to be filed by Mr. Nunn at any time in the future.

The claim set forth herein is made in part based upon information and belief, and in part based upon investigations and facts known to Mr. Nunn, through the exercise of due diligence, to date. Until this Court grants Mr. Nunn the discovery he seeks in support of this claim, however, Mr. Nunn is incapable of alleging with more specificity and/or with more factual certainty all of the facts that may be available or that may exist in support of this claim.

The facts in support of this claim, as well as the contours of the claim itself, are necessarily incomplete due to, *inter alia*: the denial of access to materials, documents, files, information and/or evidence to which Mr. Nunn has a right under applicable federal law, said denial being occasioned by the failure and/or refusal of law enforcement and other federal government agencies, prosecutorial offices, court personnel and officials, and other pertinent entities and persons to provide such materials and information; and, the deprivation of timely appointed second counsel necessary to proceed effectively in this litigation.

Set forth herein is a statement of the constitutional/legal claims of which Mr. Nunn is aware at this time, and those facts which he knows or has reason to believe are true, despite the denial of sufficient resources and access to the relevant materials,

documents, files, information and/or evidence.  Mr. Nunn reserves the right to amend

this claim, and/or add additional claims in an amended §2255 motion, after he has

been provided additional counsel, and/or once he has been provided access to all

relevant files, documents, information, material and/or evidence to which he is entitled

under applicable federal law and as more specifically requested in his motion for

discovery (incorporated herein by express reference), and thereafter sufficient time to

investigate and develop facts and witnesses in support of this and/or other claims that

may arise once such counsel and access to information have been provided.

The government knowingly relied upon false testimony and evidence throughout

the pre-trial and trial proceedings in this case.  Such false testimony included, but is

not limited to: making available a variety of benefits to numerous government

witnesses in exchange for helpful testimony, such benefits including money and

promises of money, leniency and immunity and assistance with other pending cases

and charges and fines, and promises of leniency or immunity, assistance with other

pending cases and/or charges and/or fines, etc., while denying the existence of such

to the defense and in the presence of the jury; coercing, pressuring, and coaching

witnesses (including the defendant) to provide incriminating information, irrespective

of its accuracy or the witness's ability actually to recall such information, to the

government, and/or to testify against Mr. Nunn at trial based on such coerced or

coached information; knowingly proffering and relying upon false testimony and arguments at pre-trial hearings and during trial in the presence of the jury; and relying upon arguments to the jury based upon false information and/or false characterizations of the record.  The witnesses referenced herein include most of the government witnesses who alleged that Mr. Nunn made inculpatory statements to them, including, but not limited to, Phyllis Webster, Oscar Veal, Maurice Andrews and Steven Graham. These witnesses also include other government agents who testified against Mr. Nunn and received cash rewards and/or other benefits in exchange for their testimony and/or assistance.

The government also failed to disclose to the defense substantial exculpatory information within the possession of the government or its agents and assigns, and such evidence would have exonerated Mr. Nunn and/or produced a different verdict. Such evidence included, but was not limited to: witness statements; physical evidence which exonerated Lionel Nunn; and favorable exculpatory evidence that was not disclosed to the defense.  Coupled with this, is the claim outlined *infra*, that what was revealed was not acted upon, due to the ineffectiveness of Ms. Holt.

It is a violation of due process for the prosecution to use testimony to obtain a conviction that it knew, or should have known, was false. *Mooney v. Holohan*, 294 U.S. 103, 112 (1935).  In *Mooney* and its progeny, the Supreme Court has made clear

26

that the deliberate deception of a court and jurors by the presentation of known false

evidence is incompatible with "rudimentary notions of justice." *Id.* A conviction

obtained by the knowing use of perjured testimony is fundamentally unfair, and must

be set aside if there is any reasonable likelihood that the false testimony could have

affected the judgment of the jury. *Pyle v. Kansas*, 317 U.S. 213 (1942), *Alcorta v.*

*Texas*, 355 U.S. 28 (1957), *Giglio v. United States*, 405 U.S. 150 (1972).

In *Napue v. Illinois*, 360 U.S. 264, 269 (1959), the Supreme Court reaffirmed

the expansive scope of this rule, stating that "[t]he same result obtains when the State,

although not soliciting false evidence, allowed it to go uncorrected when it appears."

The government in this case violated *Mooney*, *Giglio*, and *Napue*, by lying to

the defense and proffering false testimony to the jury, concerning the benefits and

promises granted to government witnesses in exchange for testimony and/or

information implicating Mr. Nunn, when the prosecution knew or should have known

that such testimony or assistance was false but allowed to go uncorrected. It likewise

violated these principles by coercing and/or coaching its witnesses to relate

information and/or to testify against Mr. Nunn whether or not the witness could

actually recall or attest to the matters sought from them by the government.

A conviction obtained by the knowing use of perjured testimony is

fundamentally unfair and must be set aside if there is any reasonable likelihood that

the false testimony could have affected the judgment of the jury.  *Napue v. Illinois*, *supra*, at 269-271; *Alcorta v. Texas*, *supra*; *Giglio v. United States*, *supra*.  Much of the false evidence in this case went to the credibility of the primary government witnesses who testified against Mr. Nunn and who provided the foundation and cornerstone of the prosecution's murder case against him.  Evidence of the significant but concealed benefits and promises of benefits to these witnesses constituted powerful impeachment evidence that, had the jury heard it, would have provided a compelling reason for the jury to disbelieve these witnesses and to disregard their testimony in its entirety.

The government cannot prove, beyond a reasonable doubt, that this false testimony had no impact on the verdict.  *See Kyles v. Whitley*, 514 U.S. 419 (1995).  For this reason, Mr. Nunn's federal constitutional rights were violated by the prosecution's knowing use of false testimony, and he is entitled to a new trial.

Statements obtained from a criminal defendant may not be used against him or her at trial if, in the totality of the circumstances, the defendant shows that such statements were not given voluntarily and/or were not the product of knowing and voluntary waiver of the defendant's right to remain silent.  *See Colorado v. Connelly*, 479 U.S. 157 (1986).  In this case Mr. Nunn's constitutional rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments were violated.

The prosecution also has a duty to disclose evidence that is favorable to the accused. *Brady v. Maryland*, 373 U.S. 83 (1963). This duty applies to evidence that may be used to impeach the credibility of the prosecution's witnesses, and not just to direct evidence of innocence. *United States v. Bagley*, 473 U.S. 667, 682 (1985). *Brady* also imposes a critical concomitant duty on the prosecution to personally become aware of potentially exculpatory evidence in the possession of other government actors. *Kyles*, 514 U.S. 419.

The prosecution's failure to disclose exculpatory evidence violates federal due process if the suppressed evidence is constitutionally material. *Kyles v. Whitley*, *supra*, 131 L.Ed. 2d at 506-507 (*citing Bagley*). The *Bagley* test of materiality has four aspects. First, under *Bagley*, materiality is a "reasonable probability" of a different result. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* Second, the *Bagley* test of materiality is not a sufficiency of the evidence test. The accused need not demonstrate that had he been privy to the suppressed evidence and presented the evidence at trial, he would have been acquitted. *Id.* Third, once constitutional error is found under *Bagley*, there is no further need for harmless error review. *Id.* That is because a "reasonable probability that, had the evidence been

disclosed, the result of the proceeding would have been different means that the suppression clearly would also have had "substantial and injurious effect or influence in determining the jury's verdict." *Id.* Finally, *Bagley* materiality is to be measured and analyzed "in terms of suppressed evidence considered collectively, not item by item." *Kyles v. Whitley*, *supra*, 131 L.Ed.2d at 508-509.

In this case, the prosecution violated *Brady* by suppressing constitutionally material exculpatory evidence exonerating Mr. Nunn and/or tending to exonerate Mr. Nunn, and impeaching many of the most important government witnesses and/or tending to impeach many of the most important government witnesses in the case. But for the government's failure to disclose this information to the defense, the outcome would most likely have been different.

VI.    Upon Information and Belief, Mr. Nunn was Denied His Right to the Effective Assistance of Counsel Throughout All Phases of the Pre-Trial, Trial and Post-Trial Process, In Violation of His Rights as Guaranteed Under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution

Upon information and belief, Mr. Nunn was denied his right to the effective assistance of counsel at all phases of his pre-trial, trial, and post-trial proceedings, and he was prejudiced thereby and/or prejudiced should be presumed from such denial, in violation of his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and as such provisions are interpreted

30

in all federal case law citing to, noting, or otherwise relevant to an interpretation of each of these constitutional provisions, as well as any other law set forth throughout the body of this motion.

Mr. Nunn hereby incorporates into this claim for relief, by express reference, any motion for discovery, all other paragraphs contained in this motion, all motions filed in this case previously and to be filed subsequent to the filing of this motion, as well as all appellate briefing (including certiorari litigation), filed by Mr. Nunn in connection with the above-referenced criminal case, and any further amended motions or petitions to be filed by Mr. Nunn at any time in the future.

The claim set forth herein is made in part based upon information and belief, and in part based upon investigations and facts known to Mr. Nunn, through the exercise of due diligence, to date. Until this Court grants Mr. Nunn the discovery he seeks in support of this claim, however, Mr. Nunn is incapable of alleging with more specificity and/or with more factual certainty all of the facts that may be available or that may exist in support of this claim.

Set forth herein is a statement of the constitutional/legal claims of which Mr. Nunn is aware at this time, and those facts which he knows or has reason to believe are true. Mr. Nunn reserves the right to amend this claim, and/or add additional claims in an amended §2255 motion, after he has been provided access to all relevant files,

documents, information, material and/or evidence to which he is entitled under applicable federal law and as more specifically requested in any future motion for discovery, and thereafter sufficient time to investigate and develop facts and witnesses in support of this and/or other claims that may arise once such counsel and access to information have been provided.

But for all of the instances of counsels' ineffectiveness set forth herein and to be articulated further once the Court has allowed for discovery, if any, both individually and cumulatively, there is a reasonable probability that the outcome would have been different at all stages of the pre-trial, trial, and post-trial proceedings. In any event, the instances of counsels' ineffectiveness set forth herein and to be articulated and developed in these proceedings are sufficient to undermine confidence in the verdict or, indeed, even that there was a trial in the first instance.

Trial counsel failed adequately to investigate the facts of the case, the crime, and all other bad acts and uncharged offenses of Mr. Nunn that were presented by the government to the jury. No investigator was ever hired. No doors were ever knocked on. No experts were hired. This was not a wiretap case. It was a cooperating witness case. Ms. Holt did nothing to investigate their backgrounds, their records in jail, talk to their family members. Indeed, she didn't even discuss it with Mr. Nunn, given her avoidance of the jail.

32

Trial counsel failed adequately to investigate all aspects of the prosecution's case and/or interview, or interview appropriately, all relevant witnesses on the government's witness list and/or presented by the government.

Trial counsel failed to seek and conduct adequate scientific and expert testing of all of the evidence upon which the prosecution relied at trial. This includes, but is not limited to, the physical evidence the government allegedly obtained from the scene of the offense and from other sources during the investigation of the murders.

Trial counsel failed adequately to investigate all avenues and lines of defense, and failed to present critical evidence

Trial counsel failed adequately to investigate, interview, consult with, and prepare the witnesses that could have been called to testify at trial.

Trial counsel affirmatively presented to the jury evidence that was damaging and prejudicial to her client.

Trial counsel labored under an actual conflict of interest which adversely affected her performance at all phases of the pre-trial, trial, and post-trial proceedings.

Trial counsel failed to file numerous pre-trial motions to preserve and protect the rights of Mr. Nunn, and/or failed to investigate, research, and/or present available evidence regarding those motions she did file before, during and after trial.

Trial counsel failed properly to preserve and file and argue those motions she did file before, during and after trial.

Trial counsel improperly sought, and/or failed to seek and obtain altogether, critical and important evidence that was in the possession of the prosecution, its agents or assigns, and/or other agencies and/or entities, and/or was otherwise readily available to the defense from these and/or other sources, which would have been exculpatory at the guilt-innocence and/or sentencing phases of trial, and which, if discovered, investigated, developed and presented at either pre-trial or trial proceedings, would have materially altered the outcome at all phases of the pre-trial, trial and post-trial proceedings.   Indeed, even when the Government produced discovery, trial counsel had to be repeatedly cajoled to come get it.

Trial counsel failed to move properly, or at all, for a mistrial during repeated instances in the trial when a mistrial was warranted and should/would have been granted had such motions been made.

Trial counsel failed to assert, argue and preserve numerous challenges to the prosecution's conduct during voir dire, including, but not limited to, engaging in improper and/or erroneous factual assertions and/or legal assertions or arguments before the venire either in general or individually, tainting some members of the venire by engaging in misconduct in the presence of such members, exercising peremptory

challenges in an unlawful and/or unconstitutional manner, and numerous other instances of misconduct in which the prosecution engaged during voir dire.

Trial counsel failed properly to object and preserve numerous issues that arose or occurred during voir dire, including, but not limited to, the restrictive manner in which the Court conducted the voir dire, the Court's refusal to allow questioning of certain members of the venire and/or to allow certain questions of some and/or all members of the venire, the prosecution's unlawful use of peremptory challenges, the Court's dismissal of members of the venire without adequate legal justification, and/or the Court's unlawful reliance upon *in camera*, *ex parte* proceedings to conduct portions of the voir dire and or portions of the pre-trial, trial and post-trial proceedings.

Trial counsel failed to object to the testimony in whole or in part of numerous witnesses throughout all stages of the pre-trial, trial, and post-trial proceedings, and such failure resulted in an unfair pre-trial, trial and/or post-trial proceeding and/or in the jury erroneously hearing substantial prejudicial testimony which would not have been heard had counsel performed adequately.

Trial counsel repeatedly failed properly to object to, argue and preserve numerous legal issues that arose and/or occurred throughout the pre-trial, trial, and

post-trial process, including, but not limited to, all issues presented herein and in any later filed motion for discovery, incorporated herein by express reference.

Trial counsel failed properly and/or effectively to cross-examine and/or impeach each of the government's witnesses who testified at trial.

Trial counsel failed properly and effectively to examine, and present evidence through defense witnesses who were or who could have been called to testify at trial.

Trial counsel was ineffective in failing to provide Mr. Nunn with adequate advice and counsel regarding his decisions concerning the plea in the case, as set forth elsewhere in this motion, incorporated herein by express reference, concerning whether or not to testify, and concerning the investigative leads and/or other potential witnesses that may or should have been interviewed and/or called at all phases of the pre-trial, trial and post-trial proceedings.

Trial counsel was ineffective in refusing to allow Mr. Nunn to testify in his own behalf, and in failing to inform him that such right was his and his alone to exercise regardless of his objection to such. In *Rock v. Arkansas*, 483 U.S. 44 (1987), the Supreme Court of the United States held that a defendant had a constitutional right "to testify on one's behalf at a criminal trial." Axiomatic in this regard, is that counsel shall render effective assistance of counsel with regard to explaining how the right is exercised.

Trial counsel failed to raise and preserve numerous meritorious issues for litigation in post-conviction proceedings.

Trial counsel was insufficiently familiar with the government's case, its witnesses, the relevant documents, the crime scene, the possible defenses and defense witnesses; as a result, counsel was not prepared to contest the government's case and present their own coherent theory of the case at trial.

Trial counsel improperly failed to object to numerous erroneous and unlawful jury instructions.

Trial counsel failed adequately to research and/or understand the relevant law and legal principles governing all aspects of all phases of the pre-trial, trial, and post-trial proceedings. Such failures contributed to counsels' failure to object, move for mistrial, and file other formal motions regarding numerous errors that occurred during the course of the pre-trial and trial proceedings.

Trial counsel failed to develop a coherent and/or consistent theory of the case at trial, and failed to investigate, develop and present a theory or theories of the case that were available and should have been presented.

Trial counsel failed adequately to investigate and present evidence on the theory of the defense they did choose to pursue.

Trial counsel failed to argue the appropriate federal law, constitutional, statutory, or otherwise, in support of the issues they did assert and raise at all stages of the pre-trial, trial, and post-trial proceedings.

Because of inexperience and existing workload, and due to counsel's failures adequately to address, raise and/or confront these issues, defense counsel was incapable of performing adequately throughout all phases of the pre-trial, trial, and post-trial proceedings.

After trial, counsel failed adequately to continue investigating and developing new evidence that would have been related to a variety of claims to be presented at the motion for new trial, including all claims raised (and incorporated by express reference herein) in this motion.

Trial counsel erroneously opened the door to substantial highly prejudicial testimony from both prosecution and defense witnesses at all phases of the trial.

Trial counsel failed properly to preserve objections to evidence, arguments, instructions, court rulings, and other prejudicial occurrences throughout all phases of the pre-trial, trial and post-trial proceedings.

Trial counsel failed to investigate and/or rebut and/or object or object properly to evidence concerning Mr. Nunn's alleged involvement in other crimes, adjudicated and/or unadjudicated, which evidence was then presented by the prosecution at trial.

38

Trial counsel was aware of, but failed adequately to investigate, develop and present, numerous affirmative and factual defenses at trial.

Trial counsel failed to make proper opening and closing statements, by failing to respond to prejudicial and/or unlawful arguments by the prosecution, by failing to address material misstatements of fact or law relied upon by the prosecution, and/or by failing affirmatively to raise helpful facts or arguments for the defense, and/or by failing to provide proper and helpful advocacy in any and all respects.

Trial counsel was rendered ineffective by virtue of the prosecution's misconduct at all phases of the pre-trial, trial, and post-trial proceedings in this case, as set forth elsewhere in this motion, incorporated herein by express reference, including, but not limited to: the affirmative failure to disclose evidence that was exculpatory or demonstrated witness bias at trial with respect to the factual and legal issues, regarding the witnesses who did testify, or those who did not but had relevant information which was concealed from the defense by the prosecution; the knowing use of perjured testimony at trial; and the improper and/or illegal arguments made in the prosecution's opening and closing statements.

Trial counsel was ineffective in failing to ensure that all proceedings in the case were memorialized *via* a court reporter, including, but not limited to, all pre-trial

hearings, conferences and phone conferences with the Court, all bench conferences during all hearings and proceedings in the case, and any other proceedings.

Trial counsel were ineffective in failing to ensure that Mr. Nunn was present at all critical parts of the pre-trial and trial proceedings, including but not limited to all proceedings noted in the preceding paragraph.

Trial counsel were rendered ineffective by virtue of any jury misconduct that may have occurred throughout all phases of the pre-trial, trial, and post-trial proceedings, about which Mr. Nunn is to date foreclosed from investigating, developing and presenting to this Court due to local rules, and about which Mr. Nunn has will seek discovery at a later date, incorporated herein by express reference.

Trial counsel were rendered ineffective by virtue of any and/or all of the Court's erroneous rulings in this case, including, but not limited to, all such rulings cited herein and in the accompanying motion for discovery, and in all appellate briefing filed by appellant on direct appeal, incorporated herein by express reference, and any such rulings to be identified hereafter in these habeas corpus proceedings.

Trial counsel failed adequately to investigate facts and issues about which she was or should have been on notice, for presentation at the motion for new trial, the failure of which may have waived Mr. Nunn's right to present and litigate those issues on appeal or in habeas corpus proceedings.

Trial counsel failed properly to preserve any facts, claims or issues asserted here by Mr. Nunn (or to be asserted later) which this Court or some future court may deem to have been waived by virtue of trial counsels' failure to have properly preserved such facts, claims or issues.

None of the acts or omissions of trial counsel cited herein or to be cited in future amended pleadings or as a result of evidence presented to this Court were the result of reasonable and/or pre-conceived strategy, either actual or hypothetical.

Any single instance of ineffective assistance of counsel set forth herein was or is sufficient to undermine confidence in the verdict, and but for such instance, there is a reasonable probability that the outcome would have been different at all phases of the pre-trial, trial, and post-trial proceedings.

Any sub-set of the instances of ineffectiveness of counsel set forth anywhere in this motion were and are sufficient to undermine confidence in the verdict, and but for such instance or instances, there is a reasonable probability that the outcome would have been different at all phases of the pre-trial, trial, and post-trial proceedings.

All instances of ineffectiveness of counsel set forth anywhere in this motion, when viewed in combination, were and are sufficient to undermine confidence in the verdict, and but for such instances, there is a reasonable probability that the outcome

would have been different at all phases of the pre-trial, trial, and post-trial proceedings.

As a result of any one, or any combination of, or all aspects of counsel's inadequate performance, there was a breakdown in the adversarial process, and the trial lost its character as a confrontation between adversaries.  For this reason, prejudice need not be proven to warrant the granting of a new trial.

The Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000), confirms that Mr. Nunn is entitled to relief on his claim that he was denied his right to the effective assistance of counsel at trial.

In addition to all of the above regarding the woefully inadequate trial presentation, trial counsel was ineffective in numerous other respects not specifically delineated herein.  The above-cited instances of trial counsel's ineffectiveness are not meant to exclude other instances of ineffective assistance.  Other more specific instances are not delineated herein either because such specific instances of ineffectiveness are more generally covered by the allegations contained herein, or because, owing to the circumstances set forth throughout this motion and any future motion for discovery, incorporated herein by express reference, Mr. Nunn has not been able (through no fault of Mr. Nunn or his attorney) to investigate, develop, research and/or present such additional specified instances of ineffective assistance of counsel.

Finally, Mr. Nunn reserves the right to amend his allegations of ineffective assistance of counsel after he has been given sufficient time, resources, and access to the relevant materials, files, documents, information and/or evidence to which he is entitled under federal law, and/or after such relevant materials, files, documents, information and/or evidence has been investigated, developed and presented to this Court through written affidavits, documents, depositions, or live testimony.

VII.   Counsel's Deficient Acts and Omissions When Considered Together Undermine Any Confidence in the Verdict and Sentence in this Case

With regard to *Strickland* prejudice, counsel's actions must be looked at cumulatively.   In other words, a reviewing court must look at all the ways in which the prosecution's case would have been undermined – and the defense case enhanced –had counsel performed reasonably. *Strickland*, 466 U.S. at 695 ("In making this [prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence")); *Williams v. Taylor*, 529 U.S. at 397 (in assessing prejudice flowing from deficient performance, reviewing court must consider "the totality of the available ... both that adduced at trial, and the evidence adduced in the habeas proceeding. . ."); *Henry v. Scully*, 78 F.3d 51, 53 (2d Cir. 1996) ("aggregate effect of ... three instances of inaction by defense counsel" prejudiced Petitioner; no need to

43

determine "whether one or two of these errors would have constituted ineffective assistance").

But for counsel's performance in this case, Mr. Nunn simply would not be serving a sentence of life plus thirty-five years.  Plainly, this case never should have gone to trial.  Mr. Nunn was willing to pursue a plea in order to avoid spending his life in prison.  Counsel's inexperience in cases of this magnitude resulted instead in his appearing before a jury when he had not a prayer of seeing the light of day.  Counsel's deficient acts and omissions resulted in a breakdown of the adversarial process that renders the verdict and sentence unreliable.  *Strickland*, 466 U.S. at 687.  A new trial or resentencing is required.

Finally, Mr. Nunn reserves the right to amend his allegations of cumulatve prejudice after he has been given sufficient time, resources, and access to the relevant materials, files, documents, information and/or evidence to which he is entitled under federal law, and/or after such relevant materials, files, documents, information and/or evidence has been investigated, developed and presented to this Court through written affidavits, documents, depositions, or live testimony.

44

## CONCLUSION

For all the reasons stated above, Mr. Nunn respectfully requests that this Court following an evidentiary hearing on this matter, vacate his conviction and sentence.

Respectfully submitted,

Gary E. Proctor
The Law Office of Gary E. Proctor, LLC
8 E. Mulberry St.
Baltimore, MD 21202
(410) 444 1500

45