UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,       .
                                .
          Plaintiff,            .    CR No. 00-157-15
                                .
     v.                         .
                                .
LARRY WILKERSON,                .    Washington, D.C.
                                .    Friday, April 2, 2004
          Defendant.            .
. . . . . . . . . . . . .

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE THOMAS F. HOGAN
UNITED STATES DISTRICT JUDGE

**APPEARANCES**:

| | |
|---|---|
| For the Government: | MATTHEW G. OLSEN, AUSA |
| | GLENN L. KIRSCHNER, AUSA |
| | U.S. Attorney's Office |
| | 555 Fourth Street, NW |
| | Washington, DC 20530 |
| | |
| For the Defendant: | SEBASTIAN K.D. GRABER, ESQ. |
| | P.O. Box 189 |
| | Wolftown, Virginia 22748 |
| | |
| | ANDREA MOSELEY, ESQ. |
| | Leibig, Moseley & Bennett |
| | 108 North Alfred Street |
| | Suite 101 |
| | Alexandria, Virginia 22314 |
| | |
| | CHRISTOPHER LIEBIG, ESQ. |
| | Leibig, Moseley & Dillard, P.C. |
| | 209 Commerce Street |
| | Second Floor |
| | Alexandria, Virginia 22314 |
| | |
| Transcribed from audiotape by: | BRYAN A. WAYNE, |
| | Official Court Reporter |

P R O C E E D I N G S

THE DEPUTY CLERK:  This is criminal case 00-157-15, United States versus Larry Wilkerson.  Representing the government is Matthew Olsen and Glen Kirschner.  Representing the defendant is Christopher Leibig, Sebastian Graber, and Andrea Mobley.  This is a status hearing.

THE COURT:  Good morning, counsel.  Thank you for coming in.  I got held up for a few minutes.

Good morning, Mr. Wilkerson.

Now, this is a status call, the second one we've had in this case since I accepted the assignment.  We had discussed at the last status call the status of some ongoing discovery issues and organizing the case for trial set for July 7.

Mr. Olsen, for the government, indicated he would provide the materials -- or any material not already provided to counsel, Mr. Graber and his assistants for Mr. Wilkerson, and then we could proceed with preparing the case for the trial and the suppression hearings.  We have two suppression motions set on April 23 for a hearing.

So let me get an update on where the counsel are.  The last of the Kevin Gray trials is now with the jury in the other court, and it seems to me we can turn our attention to this case.  I know that the counsel for the defendant and some of the counsel for the government have been viewing the trial, either involved in it or watching the case, and have a pretty good idea

of all the evidence that's available after two long trials.

Where are we on the matter we discussed last time?  I'll start with the government, and then I'll start with counsel for Mr. Wilkerson.

MR. OLSEN:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. OLSEN:  I continue to be principally responsible for this.  Mr. Kirschner is here today.  Obviously, he's been continued to be tied up with the trial before Judge Lamberth.

Amy Jeffress, who is now back in the office, is also, because of her prior experience with this case, we've been working together to respond to the discovery issues that are the most important issues in the case at this point in the Wilkerson case.

I can tell the Court that at this point, following our last status hearing, I provided to counsel for Mr. Wilkerson documents responsive to a particular request, documents we had promised to give him linked to one of the murders.  Those have been provided.

Today we have given Mr. Graber and Mr. Leibig a letter responding to the remainder of the discovery requests that they made in a letter following the last status hearing.  After the last status hearing, I asked to focus the requests and to help us respond to those, and they provided us with a letter which was quite helpful, and we've now responded essentially point by

point to those requests.

For example, we are providing some documents in response to those most recent requests.  We are providing, with respect to photographs, all of the reprinted photographs, reprinted color copies of all of the photographs from all of the charged offenses against Mr. Wilkerson, having decided that that was probably just the easiest, simplest way to proceed at this point.

There are some copies of some documents that apparently are not legible, and we agreed with counsel that they could come and view our copies at a mutually convenient time, because in all likelihood, looking through some of those, the best copy we gave them is the best copy we have, or essentially that.  We don't have a better copy than what we provided them, but we're willing to have certain counsel review what we have.  As well, we will make available all the physical evidence at a mutually convenient time for the counsel to review.

There will be, I assume, because we had denied to provide, rejected some of the requests for certain materials, we expect there will be some motion to compel with respect to those.

But I think the issues at this point are pretty well defined.  So I expect that that would be a rather limited motion, and, for the most part, we have or will have worked out discovery disputes.  But I do expect there may be some residual discovery issues that remain for the Court to resolve.

THE COURT:  All right.  Thank you.

MR. OLSEN:  The only other thing, Your Honor, I'd like to bring to the Court's attention is that we will file a motion for an anonymous jury today.  We will not file a motion for the use of any sort of stun belt or other type of security device along those lines.  We did leave that possibility open --

THE COURT:  At the last status hearing?

MR. OLSEN:  At the last status hearing, we decided that's not a measure that we believe is necessary under the circumstances.  But we will file a motion for an anonymous jury.

THE COURT:  All right.  Let me ask, as to the jury questionnaire, there was one used by Judge Lamberth, I guess, in the second trial that I have a copy of, the trial against Kenneth Simmons, etc.  You suggest the government use a similar questionnaire in this case?

MR. OLSEN:  Yes, Your Honor.  I do think that we would propose a similar questionnaire.  Perhaps because it's only one defendant and far fewer charges that we'd be able to make it substantially shorter.

THE COURT:  Yeah, it's improbable, too, that we need quite the extensive questionnaire we'll be having this time.  Last time we had six defendants to be tried at once.

MR. OLSEN:  Right, exactly.

THE COURT:  Mr. Graber, do you want to talk to me about the report of discovery issues in preparation of trial and

any other concerns you have?  I think at the close of today's

hearing, we're going to ask you to come up on an *ex parte*

matter.

MR. GRABER:  We have some *ex parte* matters also.

THE COURT:  That's fine.

MR. GRABER:  Thank you, Judge.  We did receive the

letter from Mr. Olsen.  We had time to read it quickly.  It's

resolved some issues; others remain to be resolved.  We believe

we need to file motions to compel on some of those items.  I

would suggest to the Court that perhaps, if the search and

seizure motions -- I don't know what the Court's availability is

on the date set for those motions.

THE COURT:  I have blocked the day off.

MR. GRABER:  Well, then we should be able to resolve

it --

THE COURT:  We can deal with discovery at the same

time.

MR. GRABER:  That would be fine with us.  I think

it's the most expeditious way to do that.  I will try to get

those motions done as soon as I can.  This next week's going

to be a little difficult for me because I have to get my tax

stuff done and everything, but --

THE COURT:  Get motions in so the government will have

a chance to respond to it before April 23rd, and I would like a

chance to read the responses and your motion before then.  Maybe

Friday the 16th.

MR. GRABER:  To file the motion?

THE COURT:  They'll need a couple days to respond.
Today is only the second --

MR. GRABER:  I can certainly have it done by the 16th,
and I'll try and actually get it done sooner.

THE COURT:  I'd like it as soon if possible and served
by hand to the government.

MR. GRABER:  I always serve them by electronic mail.
We've found that to be --

THE COURT:  The government can respond on the 22nd.

MR. GRABER:  And I anticipate filing with the motion
to compel a motion to leave for file under seal an explanation
that provides some of our defense theories related to some of
the documents we're seeking so that Your Honor will understand
the relevance.

On the issue of the illegible copies of some of the
materials, I have previously gone several years ago to the U.S.
Attorney's Office and looked at some, and some of their copies
that they provided to us, what they have is also not a good copy.

Some of these are the police reports.  The signatures of
the officer who prepared the reports in some instances is not
legible, which would make it difficult, if not impossible, to
use that document to cross-examine an officer or impeach an
officer or a witness.

These documents were made from an original somewhere, and for those where the U.S. Attorney's Office remains illegible -- and these would only be limited to those we think we're going to actually use -- we would ask that at some point the original be copied or we be provided access to copy it.  I don't know if the originals would be in police files --

THE COURT:  I don't know if they still exist or not, 10 years ago or more.  Perhaps there's a way to resolve that by also finding him and discussing with the government who that officer would be.  Maybe they would know how he signed his signature.

MR. GRABER:  Well, maybe we could just serve who we think it is, but we need a copy we can actually be able to use in trial, and there aren't a lot of those, but there are some, others that are inmate letters who may be witnesses either we call or they call that were provided that are illegible, and again -- we will work with them, and if we get to a point where there's a document we think we need, I guess we will just raise it with Your Honor at that motions hearing and resolve that.

THE COURT:  In that light also, what about -- do you have transcripts of the wiretaps that may be used in the case?

MR. GRABER:  We don't have -- no.  I've spoken with Mr. Olsen about that.  There was a consent order that Mr. Olsen and I agreed to, signed by Judge Lamberth, that included the provision that transcripts of any audiotapes or wiretaps that

were played in the group one trial would be provided to us along with the government's exhibits that were delivered to the Federal Defender's Office.  Our paralegal inventoried that box, but there was not a complete set of those transcripts of the audiotapes that were played in that trial.

So I brought that up with Mr. Olsen, and he's agreed that if it is in the consent order -- and soon he'll review that, or I can fax him a copy and he can have it readily available -- he's told me that will be provided.

As far as any transcript -- the government will not stipulate our client's voice is not on a wiretap.  My client's been listening to it, and I'm sure the government, if they decide to use anything, will provide us with a transcript. I don't think they know at this point.

THE COURT:  I just want to avoid being in trial and delaying with the challenge that the transcript did not accurately reflect the recording and we'd have to do a hearing without a jury.

MR. GRABER:  And we would request some kind of notice at least a week to a month before trial of the government's intent to use any, or if they contend his voice is on the wiretap, there was an issue before Judge Lamberth about whether the defense could proffer a defense expert to justify the voice was or was not the voice of the defendant.

I believe that the judge denied that motion, but that might

be an issue.  I think it's a Daubert question.  So we haven't gotten to that point yet, but Your Honor is wise to bring that up at this point.

Couple other things I wanted to mention if I could.

THE COURT:  Yes.

MR. GRABER:  On the jury questionnaire, I know the government and the defense counsel in both the first and second trial worked together, to the extent they could, and I think we could probably do that as well.  To the extent we disagree on anything, perhaps Your Honor can resolve that at the pretrial hearing.  And we'll work with Mr. Olsen, whoever his office has assigned primary responsibility.  We do have a copy of that juror questionnaire as a starting basis, and hopefully most of that we'll keep as is.

Mr. Olsen has indicated that they will not be using a stun belt.  We're happy with that.  We commend the government for making that recommendation.  We would still ask that the Court -- I don't know if Your Honor's made a determination, but we do have an objection to the use of the Plexiglas courtroom.  We think that would prejudice our client.

He has never been a security problem in any proceeding. It would only be Mr. Wilkerson.  I believe there are other courtrooms that have the electronic material available that we could use, and I just believe we could avoid prejudicing Mr. Wilkerson with the jury if we didn't have to use that

courtroom.  He's assured me he will be well behaved and not present any harm.  We have never had any problems whatsoever.

THE COURT:  Yeah.  It may not be Mr. Wilkerson that the concerns are about, but I will certainly review that with the marshals' office and consider what would be an appropriate courtroom.  I've used that one before.  I'll look into that.

MR. GRABER:  The other point I wanted to raise, Your Honor, is I would ask the Court to reconsider its view about meeting on Fridays.  I think that for purposes of the jurors being able to do their daily business, it's helpful for them to have a day to do that and not impinge on their weekend and family time.

Also, for us, if we do get some Jencks or Giglio material that's not previously been provided and we have to go to a courthouse to try to get access to a file, it's difficult to do that if we don't have at least one business day, that Friday, to do that.

THE COURT:  I understand.  All right.  Let me look at that.

MR. GRABER:  I wanted to bring up with Your Honor just to think about -- you don't have to resolve it now, but there may be a witness, or perhaps two, that we would ask the Court to allow Mr. Leibig and myself to split up the cross-examination because of some subject matters that we've divided up.

So for certain, it would be a major government witness, a cooperating witness, where that might happen, where we would ask Your Honor -- normally, one attorney does the cross, but we would ask for Your Honor to consider that.  And that would only probably be for one, or maybe at most, two witnesses.

THE COURT:  I'll consider that before trial.

MR. GRABER:  In terms of any other motions, I mentioned to Your Honor at our last meeting here that I have filed a grand jury abuse motion, and there was other evidence pertaining to that that came out during the testimony of this group two trial.

There was more evidence of that on Marquette McKeiver with a witness, and I feel obligated, in order to make a complete record, to at least file a supplement to make a full record on, because I believe this to be the sort of motion where the cumulative and the pattern and practice of a similar type of misconduct is relevant.  So I will be filing something to supplement that.  And Your Honor obviously can move on the way you see fit, but I do feel a need to complete the record on that point.

There may be also, having been at the crime scenes and had some meetings on these offenses, I think we may feel a need, in terms of evidence sorts of issues, to file a motion for review of one, or perhaps two, crime scenes.

THE COURT:  Review by who?

MR. GRABER:  A view by the jury.  That would be on the Darrell Henson case and the Scott Downing case.  One, because of the area of the Darrell Henson case, it has to do with what eyewitnesses saw and their ability to see.  And being at the scene, we believe, is the only way for the jury to determine, because it's a very narrow street and the distances are fairly short.

The other one, the Downing case, there was testimony about one car was in one parking lot, another car was in another one, it also was at night, and we think a view would be important so the jury would see the difficulty of seeing inside the second car.  There was testimony about inside the second car was our client and a few others.

So we will -- do we need to file a motion for leave of court to do that as you indicated in your order, or could we just file --

THE COURT:  Well, that is the -- the review it's talking about is a trial practice, not a new kind of motion for dismissing the evidence and some other things.  I'll let you file a motion as to this at trial.

MR. GRABER:  There may be other evidentiary *in limine* motions that might be filed along those lines as we get a little closer.  I anticipate those would probably be after our motions hearing but certainly well before the pretrial hearing date.

In terms of subpoenas, we wanted to bring up with Your

Honor, for defense witnesses that we want to subpoena is,
Your Honor, we were thinking we should put down a July 7 return
date.  We need some date to put on there, since Your Honor can
instruct them to remain available for when they might be called.
That's the start of the trial.

THE COURT:  Well, think about the evidence and think
about when you want to use it here.  I suppose they could
provide them the first day, bring them in the first day and tell
them to return as instructed.

MR. GRABER:  That was our view.  If they got here the
first day, they'd be told to be return on the date certain when
they would be informed to return.  But they'd be under
obligation to the Court that they would be instructed they were
under subpoena.

THE COURT:  I think we can do that just so that we
know we have them in case there are any issues.  I don't want
any issue about chasing them down.

MR. GRABER:  In terms of a documentary subpoena duces
tecum before Judge Lamberth, we are in agreement that we could
just put down this 20th day of the particular month as a return
date, and they could be served to counsel in lieu of bringing
them to court.  So we would as if we could just continue that
practice.

THE COURT:  All right.  You can discuss that,
obviously, with Messrs. Kirschner and Olsen, but if that has

worked previously, then we'll abide by that arrangement.

MR. GRABER:  In terms of stipulations, we're hoping we can perhaps work out with the government some stipulations -- for example, dates of incarceration of various individuals; authenticity of certain documents, perhaps on the other side as well as on our side; wiretaps where our client was mentioned.

Mr. Olsen indicated in the letter he gave us today the government is not willing to stipulate that our client's voice was not on the wiretaps, at least at this point, but we hope to work out those sorts of things with the government so we can spare the Court and the jury needless time expended authenticating documents.

Obviously, if something can't be worked out, we would have to get records where we would bring a custodian in.

THE COURT:  Okay.  As a general thing, the Rule 16 discovery is reciprocal, obviously, and I do enforce that rule. So if both sides are responsible for that, if the defendants request documents, and naturally, Mr. Wilkerson also has the same obligation to produce his documents.  That's very important to know the materials covered by the rule prior to trial. That's for all discovery; otherwise, we won't use it at trial.

MR. GRABER:  Yes, Your Honor.  The government has provided to us previously a request for reciprocal discovery. We can provide the documents, and we believe we're going to be using physical evidence as of the date of the motions hearing if

that's all right with the government.

MR. OLSEN:  That's fine.

MR. GRABER:  If we come up with other material, we'll provide it as we get it.

I think those are the major issues, Your Honor, other than the *ex parte* matters.

THE COURT:  And, obviously, if the witnesses that the defendant wishes to call may have any Fifth Amendment problems, that should be taken care of prior to their appearing in court, of course.  If there's a potential Fifth Amendment, they have to be advised and be advised that the Federal Public Defender will appoint counsel to represent them so that I can take those up in advance of their appearance in court, to resolve that.  In an effort to move through trial, we have to do those hearings.

All right.  Let me see if the government has anything else to add on the stipulations or other motions, or if they have any *in limine* motions they may be bringing in, and we'll try to take care of those at pretrial.

Did you already file with the Court any motions or any type of (inaudible) Mr. Wilkerson testify, etc.?

MR. OLSEN:  I think we have filed every motion that we would file with regard to other-crimes type evidence.  That has been litigated with respect to Mr. Wilkerson with the other defendants.

In response to the Court's question, it seems that we're

well on our way to resolving most, if not perhaps all, of the discovery issues.  There may be, like I said, a couple of residual issues, but we're certainly going to continue to work with Mr. Graber and Mr. Leibig to get those resolved.

One point that the Court made about defense witnesses, I know that Judge Lamberth set some deadlines for defense witnesses who are incarcerated because of the time it takes to writ those to the jurisdiction.  I think that was all.

One thing we do agree with Mr. Graber about is Fridays would be helpful to us.  As well, we've found it useful to have those days off, if that is --

THE COURT:  All right.  I'll take a look at that. It's sometimes gets the jury in a mood (inaudible) Fridays, or the first couple of Fridays, at least.  But I will take a look at that, and maybe we'll just tell them in the questionnaire that we'll not sit Fridays.

Trial length.  Have you all had a chance to make any new estimates of the trial length, I mean the government and the defense, anticipating what the length of time is?  This questionnaire obviously got -- Judge Lamberth said 18 weeks or it could have been longer.  I assume we'll be done with these people in eight weeks, 10 weeks, but it could run longer.

MR. OLSEN:  Right.

THE COURT:  All right.  Counsel, I'll see Mr. Graber and any of his associates who want to come up here to discuss

the *ex parte* issues, et cetera.

MR. OLSEN:  Would you like us to wait, Your Honor?

THE COURT:  Yes.  This will be just a second.

**(SEALED BENCH CONFERENCE ON THE RECORD)**

THE COURT:  You had filed a request for several witnesses to remain here who may be released, and I heard the government is sending them all back right away.

MR. GRABER:  Well, the judge --

THE COURT:  I have the order, by the way, you gave me, but I also understand you need to apply for a writ to hold them here.

MR. GRABER:  All right.

THE COURT:  I've been told -- and this is on a sample one that Judge Lamberth had used, an *ex parte* under-seal writ would be issued.  This is a sample, so you fill in the -- wherever it is.  Now, they may still be here, so it would be the warden of the D.C. jail that are directed to produce -- and you gotta fill in the name and all that.

MR. GRABER:  All right.  One per individual?

THE COURT:  Yeah, one per individual.  I'll give a copy to Mr. Graber.

MR. GRABER:  You did sign the order?

THE COURT:  I signed the order last week, the day it came in, because I heard the witnesses are going back.  But I've been told that may not be effective to keep them here.  They may

need a writ to get them here, so I want you to serve that
writ --

        MR. GRABER:  I can take care of those today.

        THE COURT: -- as well.  Okay?

        MR. GRABER:  So those need to be filed under seal?

        THE COURT:  Yeah.

        MR. GRABER:  So they have to be filed by 4:00?

        THE COURT:  Yeah, ex parte under seal.  And this is a
sample, so you put this on a word processor and type it up.

        MR. GRABER:  Very well.

        THE COURT:  What else did you have?

        MR. GRABER:  Well, Your Honor mentioned witnesses who
may have Fifth Amendment issues.  If there are others, is there
a date that -- I mean, those are most of the ones who we talked
to who were here --

        THE COURT:  Who you may call.

        MR. GRABER:  -- as far as others.  Is there a date
Your Honor wants us to do a similar document?  It may take us
some time to find out where they are.

        THE COURT:  Yeah, what other prisons are in the area.
I would hope by the time we do that motions hearing, maybe by
the 23rd of April.  So you need to find out who they are,
because they need a couple of months to get them here --

        MR. GRABER:  Right.

        THE COURT:  -- if they're at another jail somewhere.

That's about two and a half months from the trial, and it takes a week to get them out.  They want two months to get them here.

MR. GRABER:  So we'll try and do that by April 23.

The other issue was, there's been a personal conflict of interest that's developed with Mr. Wilkerson and our investigator.  It went into sort of personal family issues.  She got somewhat involved with his family, and Mr. Wilkerson doesn't really feel comfortable talking with her anymore, and we would ask if we could file a motion to substitute another investigator.

We're working on trying to find somebody.  We've talked to one individual, but he was involved in the group two trial, so we have to get waivers from the defendants, but we hope to, if that individual can do it and Mr. Wilkerson is comfortable with him, we will try and get that filed next week.

THE COURT:  You may need to talk to A.J. Kramer as well.  As you know, on the Part 1 part of this case, and you may know it much better than I do, but there was a concern of one or two investigators, and there's some --

MR. GRABER:  Right.  Well, this gentleman is licensed --

THE COURT:  -- investigation, and I just want to make sure we don't --

MR. GRABER:  Right.  This gentleman is licensed with both the police department and the Public Defender Service.

THE COURT:  Okay.  That's what I -- yeah, I have suggested to A.J. that everyone, CJA, ask they should use a licensed investigator, and then the local PDS is doing courses now for getting them approved.

MR. GRABER:  Right.

THE COURT:  He may know things from other cases.

MR. GRABER:  Well, that's why we have to get a waiver.

THE COURT:  Yeah, you have to.

MR. GRABER:  And I've drafted one, and the attorney for that client, that defendant, is going to talk to him about it on Monday or Tuesday.  We're going to move on that as soon as we can, but I just want to let Your Honor know we will be filing a motion with a proposed order with the individual's name, and we're going to move on that as fast as possible.

The last thing is, I'm going to be submitting a request for a travel letter for me.  We talked before about visiting Mr. Gray.  I have worked that out with his counsel.  He had certain conditions; I've agreed to those conditions.

Mr. Gray is down in the Northern Neck area, which is two or three hours from where I live, and I would probably be asking to spend maybe up to three days there.  I think I need two, maybe three days to interview him, there's just so much material.  And I'll file that early next week.  I might be able to do it today, but doing these writs, I may not.

THE COURT:  If you have to go down there and talk to

him, make sure you get something in writing from his counsel.

        MR. GRABER:  I did.  We worked that out.  It took a while, but I'm glad we won't have to bring him up here to do that.

    I think that's all we have.  Thank you, Judge.

(<strong>END OF BENCH CONFERENCE</strong>)

        THE COURT:  All right, counsel.  If there's nothing else remaining but working on that jury questionnaire and the rest of the discovery issues, and anything that's at issue for the Court to decide.

    Suppression motion on the 23rd as well as discovery issues, and the Court will consider the request of the defendant to move the courtroom because he's concerned of any prejudice.  I've used that courtroom before.  It's all right, but I'll consider that.  Fridays are to take off.  Both sides requested that, so that's under consideration as well.

    And no application of a stun belt.  Government's request for an anonymous jury, and we'll see if there's any opposition to that.  Initially, the defense counsel is going to file a motion regarding a trial with the issues about the cross-examination of witnesses, and supplemental motion for grand jury abuses are pending, as well as any *in limine* evidentiary motions.  I would like both sides to procure witnesses so we can take care of those at the pretrial.

    We have -- April 23 is the next time we get together.

I'm available if there's any issues to resolve before then. The pretrial is the 21st of June.  If you need anything in May, or something comes up, we can put another date in.

I'd also ask the possibility of getting CDs of the transcripts of the prior testimony in the trial.  Does the government have those?  Have they done CDs or only hard copy?

MR. OLSEN:  We do have electronic form.  We receive the transcripts by e-mail.  I believe that Mr. Graber does as well.  So we --

THE COURT:  Some people use...

MR. GRABER:  I still have to file a motion for daily transcripts that we talked about last time.

THE COURT:  All right.  If you want one, you need to call in advance and get the court reporters lined up for that. We'll need two reporters in here, the morning and afternoon sessions.

MR. GRABER:  I'm happy to work with the daily copy. I don't think they had daily copy exactly in the other trial.

MR. OLSEN:  Your Honor, we did have daily copy, so we received a copy the next day of the previous day.  What we didn't have, and I'm not sure that I'm authorized -- I don't think we are authorized to obtain any more because of the expense -- is the realtime transcripts.

THE COURT:  Yeah, I would like to look into getting those.  I'm not sure the expense is much more than daily copy.

I would (inaudible) -- not an official transcript, you still get a daily copy the next day, which is the official transcript. Realtime with a good reporter could be 95 percent accurate.

        MR. GRABER: We would need to apply for both, then? I believe Mr. Olsen and I agree that we definitely need to have that daily copy if we can use an official version.

        THE COURT: Well, apply for realtime, too.

      All right. We'll see you back here on the 23rd.

        MR. OLSEN: Thank you, Your Honor.

           **(Proceedings adjourned at 11:20 a.m.)**

\*   \*   \*   \*   \*   \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the audiotape recording of proceedings in the above-entitled matter, transcribed to the best of my ability.

_____
BRYAN A. WAYNE